**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

DAREN WINGO                              *

    Plaintiff                          *       Case No.: 1:19-cv-3081 (CRC)

v.                                       *

HILTI, INC.                              *

    Defendant                          *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Hilti, Inc., by its attorneys, Matthew Ranck and the Law Office of Schenker & Lopez, hereby files this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support thereof states:

### INTRODUCTION

This case arises from injuries Plaintiff allegedly suffered while working as an employee of the Washington Metropolitan Area Transit Authority (WMATA) on September 7, 2016.  At the time of the incident, Plaintiff was using a WMATA-owned Core Driller, a tool used to drill into and take core samples from concrete.  The Core Driller consists of a motor that mounts onto a column, which in turn is attached to a base plate that is secured to the floor (here, it was bolted) during use. A large drill bit is then attached to the motor and the bit drills into the concrete when it is lowered.  See Deposition of Michael Hoffmann, Defendant's corporate designee and Senior Director of Product Safety, attached hereto as Exhibit 2, at 24:2-26:1.

Factually, the Complaint alleges that a) that the Defendant designed the Core Driller and had serviced it shortly before the incident; b) that the pin holding the Driller's column to its base

1

plate broke during use, causing the Driller to kick back and strike him in the face, chest, neck and shoulder; and c) that Defendant knew or should have known of the alleged defect and had a duty to return it for use in a reasonably safe condition for users or warn of the danger.  See Complaint, generally.   Based on these alleged facts, Plaintiff pled two Counts in his Complaint: 1) Negligence/Failure to warn, asserting negligent design, negligent servicing and failure to warn of a danger relating to the alleged recent servicing of the tool, and 2) Strict Liability Design Defect-Product Liability.[1]

At this time, all fact discovery has been completed - including written discovery, the deposition of the Plaintiff, the deposition of Defendant's Corporate Designee, the depositions of six WMATA employees and an inspection of the Core Driller - and experts have been designated. These efforts have disclosed the following undisputed material facts:

1. The Core Driller was not designed or manufactured by the Defendant.

2. The Core Driller was sold by the Defendant to WMATA in 2002.

3. The Core Driller's motor (but not any other part or component) was last serviced by Defendant in 2005 nearly eleven years before the incident.

4. There is no admissible evidence that Defendant ever repaired, serviced or even saw the Core Driller or any of its component parts since 2005.

5. There is no expert testimony whatsoever that the Core Driller was unreasonably dangerous, defectively designed, defectively manufactured or negligently repaired or serviced (in fact, Plaintiff's "liability" expert has expressed no opinions whatsoever with respect to the Core Driller, servicing or any liability issue).

---

[1] In addition to this action, Plaintiff also filed a separate suit against WMATA alleging a claim for spoliation, suggesting that the tool was lost or destroyed, or that its condition was substantially altered after Plaintiff's accident but before Plaintiff's counsel was given access to it despite sending a preservation letter.  See Wingo v. WMATA, (Case No.: 1:19-cv-03507).

Based on these undisputed material facts, Defendant is entitled to summary judgment as a matter of law.[2]

## UNDISPUTED MATERIAL FACTS

1.  <u>The tool was not designed or manufactured by the Defendant</u>

Despite Plaintiff's conclusory allegation to the contrary, the Defendant did not design or manufacture the Core Driller.  Rather, a company called Hilti Aktiengesellschaft (Liechtenstein) designed and manufactured the tool (or had it designed and manufactured).  See Defendant's Answers to Interrogatories at No. 7, attached hereto as Exhibit 1; See also, Exhibit 2, at 19:16-21:3.

2.  <u>The Core Driller was sold by the Defendant to WMATA in 2002</u>

The Core Driller was sold by Defendant to WMATA on July 31, 2002 and was over fourteen years old at the time of the incident.  See Exhibit 1 at No. 2; See also, Exhibit 2, at 61:1-8.

3.  <u>The Core Driller's motor (but not any other part or component) was last serviced by Defendant in 2005</u>, nearly eleven years before the incident.

Defendant serviced or repaired the Core Driller one time (a functional repair) on November 10, 2005, and <u>only the motor</u> and no other part or component was sent to Hilti for servicing.  See Exhibit 1 at No. 2; See also, Exhibit 2 at 55:15-57-22.  As described by Defendant's corporate designee, a "functional repair" is simply a general repair to the motor, involving servicing parts inside the motor housing without the other parts or components of the Core Driller being sent to Hilti for service.  Id.

---

[2] There is a substantial dispute as to how the incident occurred, as an independent, non-party eyewitness working for WMATA within several feet of Plaintiff has testified that the accident occurred because the Core Driller had not been properly secured to the ground.  While Plaintiff denies this version of events, this dispute is not relevant to the issues raised herein.

In addition to Hilti's testimony and documents, WMATA records also do not show any repair or servicing of the Core Driller by Hilti since 2005 (or even at any time). In this regard, Plaintiff went to great lengths to locate WMATA documents that might show that Hilti repaired or serviced the Core Driller some time shortly before the incident. However, none of the WMATA documents produced pertained to the subject Core Driller, and no WMATA personnel involved in record keeping or the search for documents, all of whom were deposed, located any such documents or had any knowledge of any such repair or servicing by Defendant. In this regard, see:

1. Deposition of Derick Guzman, WMATA Superintendent of Structures Maintenance, attached as Exhibit 3, at:

   a. 9:15 - 10:6 (looked for documents to substantiate the Core Driller that was alleged to be used – i.e. to find records that WMATA had purchased it, serviced, repaired or any documentation on that Core Driller);

   b. 10:19–11:7, 22:10-23:11, 36:8-37:9, 39:8-20; 68:19-69:2 (looked and could find no records regarding the Core Driller purchase or repairs; found no documents regarding the Core Driller); and

   c. 34:20-35:3; 40:21-41:5, 44:12-16 (does not know when this Core Driller was last serviced or repaired by Hilti).

2. Deposition of Doug Stout, WMATA Maintenance Manager for Structural Inspections, attached as Exhibit 4, at:

   a. 23:13-17; 26:13-17 (has no information about the service or repair or maintenance history of this Core Driller); and

3. Deposition of Michael Kosh, WMATA Structural Repairs AA, attached as Exhibit 5, at:

   a. 15:16-16:5, 17:21-19:4, 22:20-23:2, (searched WMATA documents and computer databases/records and found nothing regarding this Core Driller); and

   b. 36:20-38:8 (if a Hilti Core Driller was sent to Hilti for repair and it was repaired, there would be documents indicating that this had occurred).

4.  <u>There is no admissible evidence that Defendant ever repaired, serviced or even saw the Core Driller or any of its component parts since 2005</u>

Plaintiff asserted that Defendant had repaired or serviced the Core Driller shortly before the incident.   See Complaint at ¶ 7.  In discovery, Plaintiff identified Mr. Guzman and Mr. Stout as the individuals who told him that Hilti had just serviced or repaired the Core Driller.  See, Plaintiff's Answers to Interrogatories, attached as Exhibit 6, at Nos. 4 and 6.  Other than these alleged statements, no further evidence to support Plaintiff's position was produced in discovery. However, any effort by Plaintiff (or any other individual) to prove Hilti recently repaired the Core Driller through testimony as to what someone else told him or said is barred as inadmissible hearsay.  See Federal Rules of Evidence 801-802.

Moreover, in this case, the parties and Court need not guess about what these persons said as we have the benefit of the purported speakers' own testimony.  Significantly, both Mr. Guzman and Mr. Stout testified that they never said that Hilti had recently repaired or serviced the Core Driller; indeed, both said they had no information regarding that issue.  See Guzman deposition, Exhibit 3 at 34:20-35:3; 40:21-41:5, 44:12-16-45:13, 68:6-18 (does not know when this Core Driller was last serviced or repaired by Hilti or if it ever was, and has no recall of telling Plaintiff otherwise); see also Stout deposition, Exhibit 4 at 23:7-17, 26:13-17 (did not tell Plaintiff that the Core Driller had just gone out for service by Hilti and was returned shortly before the accident and has no information about the service or repair or maintenance history of this Core Driller).

5.  <u>There is no expert testimony whatsoever that the Core Driller was unreasonably dangerous, defectively designed, defectively manufactured or negligently repaired or serviced (in fact, Plaintiff has no expert opinions whatsoever with respect to the Core Driller, servicing or any liability issue)</u>

The Core Driller was produced by WMATA for inspection on September 28, 2020, and counsel for all parties were present.  Plaintiff's counsel was accompanied by an engineer, Steve

Noonan, who has been identified as a liability expert in the case. However, Mr. Noonan has prepared no report and has offered no opinions of any kind. See Plaintiff's Rule 26 (b)(4) Disclosure. Clearly, Plaintiff's expert designation does not meet the requirements of FRCP 26(b)(4) and must be stricken. Nevertheless, even if not stricken, the designation is irrelevant as the witness provides no admissible evidence, raises no issues and offers no opinions whatsoever regarding the liability issues in the case – whether pertaining to product defect, negligent repair or failure to warn. Thus, there are no opinions that the product was unreasonably dangerous, designed defectively; manufactured defectively; repaired or serviced negligently by Defendant; or that the Defendant somehow failed to adequately warn about an alleged but unproven repair which Hilti did not perform and had no involvement with it or knowledge of it. Mr. Noonan literally says nothing.

## ARGUMENT

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat the motion, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); "[T]he mere existence of a scintilla of evidence" favorable to the non-moving party is insufficient to overcome a motion for summary judgment. Celotex Corp

v. Catrett, 477 U.S. 317, 323 (1986).  Here, the undisputed facts entitle Defendant to summary judgment, and there is not even a scintilla of evidence to support the Plaintiff's claims.

Plaintiff first asserts a claim for Negligence/Failure to warn, asserting negligent design, negligent servicing and failure to warn of a danger relating to the alleged recent servicing of the tool.  District of Columbia law recognizes liability for negligent design if the manufacturer fails to use reasonable care in adopting a safe plan or design. Turner v. American Motors General Corp., 392 A.2d 1005, 1007 (D.C. 1978).

Plaintiff also alleges Strict Liability Design Defect- Product Liability.  In strict liability cases, DC imposes liability for defective product design when the seller: 1) was engaged in the business of selling the product; 2) the product was defective when it left the seller; 3) the product was not substantially changed before it reached the plaintiff; and 4) the product defect caused the plaintiff's damages. Rardon v. Holland, 279 F. Supp. 3d 93, 97 (2017); see also, D.C. Std. Civ. Jury Instr. No 23-09.

However, Plaintiff cannot prove either theory as there is simply no evidence, including no expert testimony, to support them. First, as discussed above, the Defendant neither designed nor manufactured the Core Driller; it merely sold it to WMATA in 2002, with no indication of any problem such as allegedly occurred in this case in the intervening 14 years despite its consistent use over that time.

Second, no information at all has been discovered with respect to the specifics of the design or manufacture of the Core Driller, such that there is and can be no evidence or expert opinion that the design or manufacture was negligent or that any alternative design was available.  The evidence that exists demonstrates that the Core Driller was been in use since its sale in 2002, that it had been used enough to require a motor servicing in 2005 and that it was then used until the incident and

even thereafter until at least the inspection in September 2020.  The fourteen-year passage of time from sale to incident with no problems and not even a request that Hilti service the column, base or eccentric pin, completely undermines Plaintiff's claims and demonstrates no defects existed.

It is also undisputed that the Core Driller's condition has been altered by its continued use since its 2002 sale, its 2005 service of the motor and even since the incident to the present.  Thus, the product obviously did not reach Plaintiff without substantial change in condition by 2016 and it would defy logic and reason to suggest that a piece of equipment used to drill into concrete did not change condition after 14 years of use.  As noted in Defendant's Answers to Interrogatories, at the time of the inspection:

> The eccentric pin that secures the column to the base plate was missing and had been replaced with another apparatus at the time Plaintiff's counsel supplied pictures at the inception of this case and was replaced with a bolt, nut and washers at the time of the inspection; the hose connector assembly was missing; the power cord was missing an adapter; the base plate seals on the bottom of the stand were not in working order; the carriage was missing a cam, spring washer and screw; and the bit appeared to be damaged.  In addition, no bit was included on the machine at the time Plaintiff's counsel provided pictures at the inception of the litigation. Therefore, it appears that the bit on the machine at the time of the inspection had been added and that the machine had likely been used since the occurrence, thereby further changing its condition.  Finally, given the tool's age and type of work for which it is used, its condition was obviously changed between the time of manufacture and the occurrence.

See Exhibit 1, at No.2.

Further supporting the conclusion that Plaintiff's defect claims are unsupportable is the fact that there is no evidence of any history, prior suits, claims or complaints asserting any alleged defect with this Core Driller or, in particular, associated with its eccentric pin.  The only evidence in the record is that the Defendant has never even heard of a claim, allegation or instance of the eccentric pin connecting the Core Driller's column to its base breaking.  See Exhibit 2 at 67:18-68:5.

Finally, without any evidence of a defect and with substantial evidence of changes in the Driller's condition, it is impossible for Plaintiff to prove that any alleged defect was the proximate cause of the accident. Lack of causation is fatal to Plaintiff's claim as well.

At the risk of being repetitive, Plaintiff also has no evidence whatsoever to raise any genuine issue of fact necessary to even begin to establish any alleged negligent servicing of the Core Driller. Again, the undisputed facts establish that no servicing occurred or was requested in the 11 years before the incident, and that the work done in 2005 was to the motor only and that the Driller's other component parts were not even sent with the motor. As such, Defendant never even had the opportunity 11 years earlier to inspect the part that allegedly broke. Thus, there could not have been any negligence – either servicing or failure to warn – in any way related to the incident at issue, and Plaintiff has zero evidence to argue to the contrary. As with the other elements of the alleged claims, there is simply no evidence to support Plaintiff's allegations.

In sum, Plaintiff for the multitude of reasons set forth herein, Plaintiff lacks even a scintilla of evidence to support his claims. Ultimately, even with all inferences resolved in his favor, all he will be able to prove is that the Defendant sold the Core Driller to WMATA 14 years before the incident and serviced its motor 11 years before the incident. It is difficult to conceive of less support for these claims.

**CONCLUSION**

For the reasons aforesaid, as the undisputed material facts demonstrates that there is no evidence to support Plaintiff's claims, Defendant is entitled to Summary Judgment as a matter of law.

_____

9

Matthew Ranck (#484983)
Schenker & Lopez
600 Red Brook Boulevard
Owings Mills, Maryland 21117
410-559-2420
Matthew.ranck@zurichna.com
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of July 2021, a copy of the foregoing Motion

for Summary Judgment was served electronically to:

Justin M. Beall, Esquire (DC #502394)
Koonz, McKenney, Johnson, DePaolis & Lightfoot, L.L.P.
Willow wood Plaza 1
10300 Eaton Place, Suite 200
Fairfax, VA  22030
Jbeall@koonz.com
*Counsel for Plaintiff*

/s/ Matthew A. Ranck
Matthew A. Ranck, (#484983)