UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAREN WINGO**, | |
| Plaintiff, | |
| v. | Case No. 19-cv-3081 (CRC) |
| **HILTI, INC.**, | |
| Defendant. | |

**MEMORANDUM OPINION**

Hilti, Inc. moves for summary judgment in this personal injury action brought by Plaintiff Daren Wingo. Wingo alleges Hilti failed to properly design and repair a piece of equipment—a core driller—that Wingo was using during his employment with the Washington Metropolitan Area Transit Authority (WMATA) when the equipment malfunctioned. Part of the equipment struck Wingo in the chest and shoulder, causing various injuries. Opp. at 1, ECF No. 26.

Although his accident occurred in 2016, Wingo was unable to inspect the core driller until 2020, after it had been put back into service by WMATA. Wingo has filed a separate spoliation of evidence lawsuit against WMATA, and urges the Court not enter summary judgment for Hilti because, "through no fault of his own," Wingo's efforts to obtain evidence in support of his claim against Hilti have been thwarted by WMATA. Opp. at 3. That may or may not be so. The question here, however, is whether Wingo has shown a genuine issue of material fact as to his claims against Hilti. Finding he has not, the Court will grant summary judgment in Hilti's favor.

I.  **Background**

Wingo alleges that on or about September 7, 2016, he was using a core driller—a tool used to extract core samples from concrete—at a WMATA jobsite when the driller

malfunctioned.  Compl. ¶ 5, ECF No. 1-1.  He further alleges that Hilti manufactured the core driller, and that it had been serviced the day before the incident at a local Hilti facility.  Compl. ¶ 7.  Wingo claims that, in the exercise of reasonable care, Hilti should have noticed whatever defect in the driller led to the accident, and therefore breached its duty of care by providing the unsafe equipment and by failing to warn foreseeable users (presumably Wingo and other WMATA employees) of the defect.  Compl. ¶¶ 8, 13.

Wingo sued Hilti in D.C. Superior Court for negligent failure to warn and strict liability for design defects.  Compl. ¶¶ 10–20.  Hilti removed the action to this Court and answered.  The parties then proceeded to discovery, which included depositions of Wingo, Hilti's corporate designee, and several WMATA employees.  Wingo was unable to inspect the core driller during discovery, however, until several years after the incident and after WMATA had already placed the driller back into service.  Opp. at 1.[1]  After discovery closed in April 2021, Hilti moved for summary judgment, which Wingo opposes.  The motion is ripe for the Court's consideration.

## II.  Legal Standard

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Deutsch v. Barsky, 795 A.2d 669, 673 (D.C. 2002); Fed. R. Civ. P. 56(c).  A dispute is "genuine" only when a reasonable fact-finder could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477

---

[1] Wingo filed a separate action against WMATA for spoilation of evidence based on this delay.  See Wingo v. WMATA, Case No. 19-cv-3507 (FYP) (D.D.C. 2019).  That case remains pending.

U.S. 242, 248 (1986). And a fact is "material" only if it can affect the outcome of the case. Id. To defeat a motion for summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In considering a motion for summary judgment, the Court "must view the evidence in the light most favorable to the opposing party." Tolan v. Cotton, 572 U.S. 650, 657 (2014) (internal quotation marks omitted). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

Once the movant has carried this initial burden, the party opposing summary judgment must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Jeffries v. Barr, 965 F.3d 843, 859 (D.C. Cir. 2020) (quoting Anderson, 477 U.S. at 256). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). "Mere allegation or denial," alone, is insufficient to defeat summary judgment. Jeffries, 965 F.3d at 859. Similarly, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to defeat a motion for summary judgment. Anderson, 477 U.S. at 252.

### III. Analysis

In support of its motion for summary judgment, Hilti points to the following undisputed material facts that were revealed during discovery:

1. The core driller was neither designed nor manufactured by Hilti; rather, it was designed and created by a presumably affiliated company called Hilti Aktiengesellschaft, based in Liechtenstein, that is not a party to this case. Mot. at 3, ECF No. 23, Ex 2.

3

2. The core driller was sold by Hilti to WMATA in 2002, fourteen years before the incident. Mot. at 3.

3. The core driller was last serviced by Hilti in 2005, eleven years before the incident, and that service involved only a repair to the motor, not any other part of the machine. Id.

4. Although Wingo deposed multiple WMATA employees, he was unable to locate records or obtain testimony that the driller was serviced any time after 2005—either by Hilti or another company. Mot. at 4.

In addition, Derick Guzman, WMATA Superintendent of Maintenance, and Doug Stout, WMATA Maintenance Manager, both testified in depositions that they had no information about whether Hilti repaired the core driller and neither recalled telling Wingo that the core driller was serviced right before the incident. Mot. at 5.

Because the driller was placed back into service, Wingo was not able to inspect the driller until September 2020. Understandably, then, the liability expert retained by Wingo in this case was unable to offer an opinion on the cause of the core driller's malfunction back in 2016. Opp. at 2. Wingo has apparently also been unable to obtain records from WMATA related to service or maintenance of the core driller in question. Id.; see also Mot. at 4.

Wingo does not contest these facts. See Opp. at 1–2. Rather, he argues the entry of summary judgment would be "manifestly unjust, unfair, and against public policy, that through no fault of his own, Plaintiff's efforts to pursue this claim against Defendant Hilti have been barred by WMATA's Spoliation of Evidence." Opp. at 3.

Wingo does not, however, point to a "specific fact" that would show "that there is a genuine issue for trial." Jeffries, 965 F.3d at 859. "Mere allegation or denial," alone, is insufficient to defeat summary judgment. Id. Although perhaps regrettable, the fact that Wingo was not able to access certain evidence does not create a genuine dispute as to any material fact, especially because there seems to be little prospect of recovering whatever evidence Wingo

4

hoped to obtain from inspecting the core driller.  Wingo admits that, without access to this evidence, he is "unable to establish that the failure of the core driller was the result of a defect in the design of the core driller and/or negligent maintenance of the core driller performed by Defendant Hilti." Opp. at 2.  Therefore, Wingo has failed to address Hilti's assertions of fact, and the Court may "consider [those] fact[s] undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

The undisputed facts reveal that Wingo cannot succeed on either of his claims.  As to his first claim, the District of Columbia recognizes liability for negligent design if the manufacturer fails to use reasonable care in adopting a safe plan or design.  Turner v. American Motors General Corp., 392 A.2d 1005, 1007 (D.C. 1978).  However, Hilti neither designed nor manufactured the core driller, it merely sold it to WMATA in 2002.  Mot. at 7.

Second, Wingo alleges strict liability based on a design defect.  The District of Columbia imposes strict liability for defective product design "when the seller: 1) was engaged in the business of selling the product; 2) the product was defective when it left the seller; 3) the product was not substantially changed before it reached the plaintiff; and 4) the product defect caused the plaintiff's damages." Rardon v. Holland, LP, 279 F. Supp. 3d 93, 97 (D.D.C. 2017).

There is no evidence of a product defect in the record or that the defect, if it existed, caused Wingo's injuries.  As described above, it is undisputed that the core driller was used by WMATA from 2005 to 2016 without incident.  Additionally, Wingo's liability expert could not offer an opinion on the cause of the core driller's malfunction, because he was unable to inspect the driller until four years after the incident. Opp. at 2.  To withstand a motion for summary judgment, "there must be evidence on which the jury could reasonably find for" the nonmoving party.  Anderson, 477 U.S. at 252.  Viewing the facts in Wingo's favor, the Court is nevertheless

hard pressed to see how he would prove the core driller was defective in 2002 when Hilti sold it to WMATA and that any defect was the proximate cause of his injuries.

### IV. Conclusion

For the forgoing reasons, the Court will grant Hilti's motion for summary judgment as to all claims. A separate order will follow.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:  January 18, 2022